UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROSS DRESS FOR LESS, INC., a Virginia corporation, | ) ) ) |
| Plaintiff, | ) Case No. ) ) |
| v. | ) ) |
| ST. LOUIS RETAIL OUTLET, LLC, a Missouri limited liability company, | ) ) ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

Plaintiff Ross Dress for Less, Inc., a corporation organized under the laws of the State of Virginia, for its Complaint against Defendant St. Louis Retail Outlet, LLC, states as follows:

### INTRODUCTION

1. This is an action by Plaintiff Ross Dress for Less, Inc. ("Ross"). Ross is a tenant at the St. Louis Mills Mall ("Mills Mall"). Defendant St. Louis Retail Outlet, LLC ("Defendant") is the landlord of the Mills Mall for purposes of renting space at the mall. This action arises as a result of occupancy at the Mills Mall falling below contractually established levels.  As a result, certain rights of Ross have been triggered under its lease at the Mills Mall.  Defendant refuses to recognize these rights, thus creating a justiciable controversy.

2. Ross seeks a declaration of the parties' respective rights and duties with regard to Ross's Lease at the Mills Mall (the "Lease") as a result of a Secondary Reduced Occupancy Period ("SROP"), as defined in the Lease, and Defendant's unwillingness to comply with the Lease's terms pursuant to an SROP or to provide information refuting an SROP's existence.

1

Ross also seeks repayment of certain amounts previously erroneously paid to Defendant under theories of money had and received and unjust enrichment.

## PARTIES

3. Ross is a Virginia corporation with a principal place of business in Dublin, California. Ross is an "off-price" department store chain with stores in over 30 states. Ross sells, among other items, brand-name apparel, accessories, and footwear.

4. Defendant is a limited liability corporation registered in Missouri and operated out of Great Neck, New York by Namdar Realty Group, LLC.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 as Plaintiff and Defendant are, on information and belief, citizens of different States, and the amount in controversy is greater than $75,000.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) as the property that is the subject of this action is situated in this judicial district.

## BACKGROUND FACTS

7. On February 24, 2012, Ross and St. Louis Mills Limited Partnership, to whom Defendant is successor, entered into a written Lease.  A true and correct copy of the Lease is attached as Exhibit "1," and it and its contents are incorporated by reference.

8. The Lease provides for Ross to occupy retail space at the Mills Mall at 5555 St. Louis Mills Boulevard in Hazelwood, St. Louis County, Missouri, 63042, and is to last for approximately ten years from the date of signing, with up to four additional 5-year option periods.

9. On February 12, 2016, Defendant purchased the Mills Mall and assumed, among other rights and obligations, the Lease.

## RELEVANT LEASE PROVISIONS

10. Section 1.7.2 of the Lease establishes a minimum amount of the shopping center to be occupied by retailers excluding Ross. It provides in part:

> "Required percentage of Leasable Floor Area of the Shopping Center to be occupied by operating retailers (as defined in Section 1.7.1): sixty percent (60%) [. . .]"

11. Section 6.1 of the Lease relates to Gross Rent. In addition to establishing the base rent to be paid, this section also defines when a Reduced Occupancy Period occurs. Section 6.1.3(a) relates to Co-Tenancy Provisions. It provides in part:

> "A "Reduced Occupancy Period" shall occur unless all of the following requirements are satisfied on the Commencement Date and thereafter throughout the Term: . . . (iii) retail tenants (as defined in Section 1.7.1) of the Shopping Center, including the Required Co-Tenants, are open and operating under bona fide leases of a minimum of three (3) years' duration in at least the percentage of the Leasable Floor Area of the Shopping Center indicated in Section 1.7.2 [. . .]"

12. Section 6.1.3(c) relates to Secondary Reduced Occupancy Periods. It provides in part:

> "If a Reduced Occupancy Period occurs at any time after the Commencement Date and after the satisfaction of the Required Co-Tenancy set forth in Section 1.7.1 and Section 1.7.2. . . ("Secondary Reduced Occupancy Period"), Tenant's total obligation for Gross Rent shall be replaced by the lesser of Gross Rent or Substitute Rent… If the Secondary Reduced Occupancy Period continues for a period of twenty-four (24) consecutive calendar months…, then in addition to Tenant's right to pay the lesser of Gross Rent or Substitute Rent during the Secondary Reduced Occupancy Period, Tenant shall have the ongoing option to terminate this Lease upon giving Landlord Tenant's Reduced Occupancy Termination Notice, provided the Reduced Occupancy Termination Notice is given prior to the expiration of the Secondary Reduced Occupancy Period. The provisions of this Section 6.1.3(c) shall apply to any subsequent Secondary Reduced Occupancy Period."

13. Article 2 of the Lease contains definitions of Lease terms. Section 2(b) provides in part:

> "Substitute Rent shall mean the lesser of (a) Gross Rent, or (b) two percent (2%) of Tenant's Gross Sales during the preceding month."

14. Section 6.1.3(d) relates to Unamortized Cost of Leasehold Improvements. It provides:

> "In the event Tenant terminates this Lease pursuant to Sections 6.1.3(b) or (c) above, Landlord shall pay to Tenant an amount equal to the Unamortized Cost of Tenant's leasehold improvements, which sum shall be due and payable to Tenant within thirty (30) Business Days following the date of the Reduced occupancy Termination Notice. If the Unamortized Cost of Tenant's leasehold improvements is not timely paid, Tenant may deduct the amount due from any payments due to Landlord, if any hereunder, in addition to and cumulative with any other remedies available to Tenant at law, in equity, or under the terms of the Lease."

15. Section 6.1.3(f) relates to Landlord Reporting Requirements. It provides in part:

> "Within thirty (30) days following Tenant's written request, Landlord shall provide Tenant, but not more frequently than once every Lease Year, a Shopping Center tenant roster and occupancy/vacancy report for the entire Shopping Center ("Co-Tenancy Report") certified as current as of the date of the report. In the event Landlord fails to provide the Co-Tenancy Report within the time period specified above and such failure continues for thirty (30) days following Tenant's second written request therefor, Tenant may defer fifty percent (50%) of any payments relating to Gross Rent until such time as the Co-Tenancy Report is received by Tenant. Tenant shall pay the amount deferred within thirty (30) days following Tenant's receipt of the Co-Tenancy Report."

16. Section 20.2.2 relates to Mediation. It provides in part:

> "The parties shall first try in good faith to settle the Dispute by Mediation pursuant to the provisions as set forth below. Either party may initiate Mediation. The party commencing the Mediation shall first give a written notice (a "Mediation Notice") to the other party setting forth the nature of the Dispute . . . If the Dispute or any part thereof has not been resolved by Mediation as provided above within sixty (60) days after receipt of the Mediation Notice, or if a party fails to participate in Mediation, then at the option of either party by written notice, the Dispute shall be determined by suit or action in court [. . .]."

4

17. Section 20.4.2 relates to Actions Between the Parties and allows for recovery of attorneys' fees, costs and other expenses in the event of litigation between the parties concerning the Lease. The section provides in part:

> "If either party commences an action against the other party arising out of or in connection with this Lease…the prevailing party shall be entitled to have and recover from the losing party reasonable attorneys' fees, costs of suit, investigation costs, discovery costs, and expert witness fees and costs, including costs of appeal."

## NOTICES TO DEFENDANT AND ACTIONS BY ROSS

18. On March 29, 2017, Ross notified Defendant by letter of Ross's determination that, based on analysis of tenancy reports provided by the prior owner, as of May 1, 2015, retail occupancy at the Mills Mall was below the 60% required by the Lease. Ross further stated that due to the low occupancy level, the Co-Tenancy provisions of the Lease were not being met, and that an SROP, as defined by the Lease, existed as of May 1, 2015. Accordingly, pursuant to Section 6.1.3(c) of the Lease, Ross established that it was entitled to pay Substitute Rent in lieu of Gross Rent, as of May 1, 2015.

19. The March 29 letter also demanded repayment within ten days of overpaid Gross Rent in the amount of $199,086.84 for the period between May 1, 2015 and February 28, 2017. Ross attached Substitute Rent worksheets showing Ross's rent overpayment calculations. A true and correct copy of the March 29, 2017 letter is attached as Exhibit "2."

20. Beginning in March 2017, Ross began off-setting the amount of Substitute Rent that would be due each month against the amount of overpaid Gross Rent. Since Ross began offsetting the amount of the Substitute Rent, the cumulative balance due to Ross for overpaid Gross Rent has declined from $199,086.84 in March 2017 to $121,000.10, as of June 30, 2018.

5

21.     Ross received no response to its March 29, 2017 notice.  On September 19, 2017, Ross sent yet another notice letter to Defendant. In the September 19, 2017 letter, Ross included a report documenting that the required occupancy levels at the Mills Mall had fallen below the required 60%. Ross reiterated that an SROP existed as of May 1, 2015, and demanded repayment of overpaid Gross Rent.  Ross further stated that an SROP had been in effect for at least 24 months at the time of the September 2017 notice, which provided an ongoing right to terminate the Lease and, as a result of the termination, for Ross to receive payment of its unamortized cost of leasehold improvements, pursuant to Sections 6.1.3(c) and (d) of the Lease.  A true and correct copy of the September 19, 2017 letter is attached as Exhibit "3."

22.     Ross received no response to the September 19, 2017 letter.  On February 28, 2018, Ross sent a third notice letter to Defendant. In that letter, Ross reiterated that: (1) an SROP had been in effect at least 24 calendar months, giving Ross an ongoing option to terminate the Lease, including repayment of the unamortized cost of leasehold improvements; and (2) the existence of the SROP provided Ross the right to recoup $142,520.12 in overpaid rent for the period from May 1, 2015 to February 28, 2018. A true and correct copy of the February 28, 2018 letter is attached as Exhibit "4."

23.     On March 2, 2018, Defendant responded by email to Ross's February 28, 2018 letter. In its March 2, 2018 email, Defendant disputed Ross's claim that occupancy was below 60% as of May 1, 2015. Defendant included a tenant roster which Defendant asserted reflected occupancy of greater than 60% as of May 1, 2015.  In its March 2 email, Defendant also claimed to possess occupancy reports for July 1, 2016 and July 1, 2017 which purportedly showed continued occupancy levels of greater than 60%. Despite its claim, Defendant has failed to provide Ross with those occupancy reports.

6

24. Ross disputes Defendant's calculations, which, among other errors, did not exclude tenants with leases of less than three years' duration or non-retail tenants, as required by the Lease. Ross requested by email of counsel on March 8, 2018 that Defendant provide an explanation for its inclusion of such tenants by March 15.

25. Ross's March 8 reply also requested occupancy reports by March 15 for every month starting January 1, 2015 to enable Ross to validate the occupancy requirements. Ross is entitled to a Co-Tenancy Report, pursuant to Section 6.1.3(f) of the Lease.

26. To date, Defendant has not provided Ross with any of the requested information.

27. Based on previous information Ross has received, Ross asserts that an SROP has existed since 2015. Defendant denies this, but it refuses to provide adequate information to support its claim.

28. On April 18, 2018, Ross sent a Mediation Notice to Defendant, pursuant to Section 20.2.2 of the Lease. Pursuant to the Lease, the parties had 60 days in which to resolve their dispute. A true and accurate copy of the April 18, 2018 letter is attached as Exhibit "5."

29. To date, Defendant has failed to participate in mediation. Sixty days had elapsed by June 18, 2018. Thus, from that date, Ross had, and continues to have, the right to file suit, pursuant to Section 20.2.2 of the Lease.

30. Ross is entitled to attorneys' fees plus costs if it prevails in this dispute, pursuant to Section 20.4.2 of the Lease.

## COUNT I – DECLARATORY JUDGMENT

31. Ross incorporates by reference all of the allegations hereinabove stated.

32. An actual and justiciable controversy exists between Ross and Defendant concerning the rights and obligations of Ross and Defendant under the terms of the Lease.

33. Ross is entitled, pursuant to Rule 57 of the Federal Rules of Civil Procedure and R.S. Mo. § 527.010, et seq., to this Court's declaration of the respective rights and duties of the parties under the Lease, and, in particular, a declaration that:

   a. An SROP exists as of May 1, 2015;

   b. Ross is entitled to terminate the Lease;

   c. Upon termination of the Lease, Ross is entitled to the unamortized cost of leasehold improvements;

   d. Ross is entitled to repayment of its overpaid Gross Rent, plus interest; and,

   e. Such other matters as the Court deems proper and just.

34. Ross is owed:

   a. Repayment of overpaid Gross Rent in the amount of $121,000.10, as of June 30, 2018; and,

   b. Payment of the unamortized cost of leasehold improvements in the amount of $490,295.99, if the Lease were terminated as of January 31, 2019.

WHEREFORE, Plaintiff Ross Dress of Less, Inc. prays for Judgment of this Court declaring that:

1. An SROP exists, and has continually existed, since May 1, 2015;

2. Ross is entitled to terminate the Lease;

3. Upon termination of the Lease, Ross is entitled to the unamortized cost of leasehold improvements as of the date of Judgment;

4. Ross is entitled to repayment of its overpaid Gross Rent, plus interest, as of the date of Judgment;

5. Ross is entitled to an award of attorneys' fees, costs and other expenses related to this litigation; and,

6. Such other matters as the Court deems proper and just.

## COUNT II – BREACH OF CONTRACT

35. Ross incorporates by reference all of the allegations hereinabove stated.

36. Pursuant to Section 6.1.3(c) of the Lease, Ross's total obligation for Gross Rent "*shall* be replaced by the lesser of Gross Rent and Substitute Rent[.]" (emphasis added).

37. Because of Defendant's failure to provide a Co-Tenancy Report indicating the existence of an SROP pursuant to Section 6.1.3(f) of the Lease, Ross was unaware that its total obligation for Gross Rent was replaced by Substitute Rent upon the commencement of an SROP. Therefore, Ross overpaid rent for multiple years before being made aware of an SROP's existence.

38. Defendant breached the Lease by accepting, and refusing to refund to Ross, its overpaid rent.

WHEREFORE, Plaintiff Ross Dress of Less, Inc. prays for the following relief:

1. An award of damages in the amount of overpaid gross rent, to be proven at trial, but believed to equal the amount of $121,000.10, as of June 30, 2018, plus interest, representing unjust enrichment conveyed by Ross upon Defendant and to which Ross is entitled;

2. For an award of attorneys' fees in favor of Ross and against Defendant;

3. For an award of costs to be assessed in favor of Ross and against Defendant; and

4. For such other relief as this Court deems appropriate and just.

## COUNT III – MONEY HAD AND RECEIVED

39. Ross incorporates by reference all of the allegations hereinabove stated.

40. Ross is entitled to pay Substitute Rent because of the existence of an SROP since May 1, 2015, if not earlier.

41. Defendant has not provided information that refutes Ross's contention that there exists an SROP, despite Ross's repeated requests.

42. Because of Mills Mall's low occupancy levels, combined with Defendant's failure to provide timely information to Ross regarding occupancy levels at the St. Louis Mills Mall, Ross has overpaid rent, and Defendant has been unjustly enriched, as of the date of filing of this complaint, in the amount of $121,000.10 as of June 30, 2018.

43. Ross has a right to recover its overpaid rent and disgorge Defendant of its unjust enrichment.

WHEREFORE, Plaintiff Ross Dress of Less, Inc. prays for the following relief:

1. An award of damages in the amount of overpaid gross rent, to be proven at trial, but believed to equal, the amount of $121,000.10, as of June 30, 2018, plus interest, representing Ross's damages resulting from Defendant's breach of contract, and to which Ross is entitled;

2. For an award of attorneys' fees in favor of Ross and against Defendant;

3. For an award of costs to be assessed in favor of Ross and against Defendant; and,

4. For such other relief as this Court deems appropriate and just.

## COUNT IV – UNJUST ENRICHMENT

44. Ross incorporates by reference all of the allegations hereinabove stated.

45. Ross has conferred benefits in the form of overpaid Gross Rent upon Defendant in good faith.

46. Defendant has actually benefitted from the receipt of the overpaid Gross Rent by having the use and enjoyment of Ross's money for years when it is not entitled to the payment.

47. Defendant's retention of the benefits in the form of Ross's overpaid Gross Rent would be unequitable.

48. Ross has no adequate remedy at law.

WHEREFORE, Plaintiff Ross Dress of Less, Inc. prays for the following relief:

1. An award of damages in the amount of overpaid Gross Rent, to be proven at trial, but believed to equal the amount of $121,000.10, as of June 30, 2018, plus interest, representing unjust enrichment conveyed by Ross upon Defendant and to which Ross is entitled;

2. For an award of attorneys' fees in favor of Ross and against Defendant;

3. For an award of costs to be assessed in favor of Ross against Defendant; and

4. For such other relief as this Court deems appropriate and just.

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By: /s/ Mark B. Leadlove
    Mark B. Leadlove #33205
    Nathan Emmons #70046
    211 N. Broadway
    Suite 3600
    St. Louis, MO
    63102-2750
    (314) 259-2000
    Fax: (314) 259-2020

Attorneys for Plaintiff
Ross Dress for Less, Inc.